```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
                                                                  :
                                                                  :   24-MC-104
IN RE GRAND JURY SUBPOENA DATED                                   :
FEBRUARY 23, 2024                                                 :   SEALED
                                                                  :   OPINION AND ORDER
                                                                  :
------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Rule 26(c) of the Federal Rules of Civil Procedure provides that, "for good cause," a district court may enter a "protective order" limiting disclosure of materials or information exchanged during civil discovery. In *Martindell v. International Telephone & Telegraph Corp.*, 594 F.2d 291 (2d Cir. 1979), and its progeny, the Second Circuit held that the Government may not gain access to materials protected in this manner — even by grand jury subpoena — unless it demonstrates "improvidence in the grant of [the] Rule 26(c) protective order or some extraordinary circumstance or compelling need," *id.* at 296; *see also In re Grand Jury Subpoena Duces Tecum Dated Apr. 19, 1991*, 945 F.2d 1221, 1224 (2d Cir. 1991). The question confronted here — which appears to be a question of first impression — is whether the *Martindell* test applies to materials that are subject to a protective order entered in a private arbitration. For reasons explained below, the Court concludes that it does not and, thus, grants the Government's motion to compel compliance with the grand jury subpoena at issue.

## BACKGROUND

[redacted]

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

██████████████   The ██████████ the United States Attorney's Office in this District to open a criminal investigation of ██████. *See* Gov't Mem. 4.  In the course of that investigation, the Government served the grand jury subpoena at issue here (the "Subpoena") on ██████ *see* Gov't Mem., Ex. A ("Subpoena"), along with a non-disclosure order signed by Magistrate Judge Cave prohibiting ██████ from disclosing the Subpoena's existence to anyone for 180 days.  *See* Subpoena 3-4; ██████ Opp'n 1.

To date, ██████ has refused to comply with the Subpoena on the ground that doing so would violate a stipulated protective order (the "Protective Order") governing its arbitration proceeding with ██████  *See* ██████ Opp'n 1-2, 4-5; Gov't Mem. 2-4.  The Protective Order generally limits the dissemination of certain documents exchanged or filed in the arbitration.  *See generally* Gov't Mem., Ex. B ("Protective Order"), ¶¶ 1, 7.  Two provisions are especially relevant here.  First, Paragraph █ provides, in relevant part, as follows:



2



*Id.* ¶ ▇   Second, Paragraph ▇ of the Protective Order prohibits the disclosure of ▇

After accepting service of the Subpoena, ▇ advised the Government that it would not comply with the Subpoena absent a court order because it calls for production of materials that ▇ has designated as confidential under the Protective Order and, under *Martindell* and its progeny, the Protective Order trumps the Subpoena. Gov't Mem 5. On March 8, 2024, the Government moved to compel ▇ compliance with the Subpoena.[1]

### DISCUSSION

The Government raises three arguments in support of its motion: first, that the Protective Order does not, in fact, bar ▇ from producing the materials sought by the Subpoena; second, that the *Martindell* test does not apply because the protective order was issued by an

---

[1]   The undersigned was assigned the motion in Part I, but has retained jurisdiction over it.

arbitrator rather than by a federal court; and finally, that even if the *Martindell* test applies, the Government has a "compelling need" for the materials. *See* Gov't Mem. 7-13.

**A.   The Materials Are Covered by the Protective Order**

The Court begins with the question of whether the Protective Order covers the materials at issue because, if the Government were right on that score, the Court would not need to address the novel question of whether the *Martindell* test applies. The Government, however, is wrong. Paragraph ▇ could certainly have been better drafted. But read as a whole, it makes sense only if it is understood to require disclosure of a subpoena to the party that has designated material as confidential — here, ▇ — *before* the recipient of the subpoena may comply with it. Absent such a requirement, the Paragraph's assurance that "▇▇▇▇" would (at least in some circumstances, including those here) be an empty one. Protective Order ¶ ▇. And absent such a requirement, the temporal limitation in the following sentence — proscribing production "▇▇▇" — would be a meaningless formality. Such a reading would run afoul of the principle that "[a]n interpretation . . . that has 'the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.'" *LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005).

Paragraph ▇ does not change or trump Paragraph ▇. The Government emphasizes that Paragraph ▇ is "extremely broad" because it encompasses "▇▇" and explicitly provides that ▇ need provide notice of a subpoena only "to the greatest extent permitted by law." Gov't Mem. 8-9 & n.5; Gov't Reply 1-2. But putting aside the question of whether documents and transcripts produced in connection with the arbitration qualify as "▇▇," Paragraph ▇'s generality is precisely

4

what requires it to give way to Paragraph ▇'s specificity. *See In re Lehman Bros. Holdings Inc.*, 761 F.3d 303, 313 (2d Cir. 2014) ("To the extent that there appears to be conflict between [two] provisions, the specific governs the general."); *see also Liberty Surplus Ins. Corp. v. Segal Co.*, 142 F. App'x 511, 515 (2d Cir. 2005) ("[I]t is axiomatic that 'particularized contract language takes precedence over expressions of intent that are general, summary, or preliminary.'" (quoting *John Hancock Mut. Life Ins. Co. v. Carolina Power & Light Co.*, 717 F.2d 664, 669 n.8 (2d Cir. 1983))). Here, the parties agree that the materials at issue are materials that have been designated as confidential by ▇ and that Paragraph ▇ governs such materials. Thus, Paragraph ▇ — not the more general Paragraph ▇ — applies.[2]

In short, Paragraph ▇ of the Protective Order prohibits ▇ from complying with the Subpoena because it did not (and, by virtue of the non-disclosure order, could not) give ▇ notice of the Subpoena.

**B. The *Martindell* Test Does Not Apply to Arbitrations**

Thus, the Court is forced to confront the question of whether the *Martindell* test applies to arbitrations.[3] *Martindell* involved a request by the United States Attorney's Office for

---

[2] The Government contends that ▇ reading of the Protective Order should be rejected because "it would be void as against public policy." Gov't Mem. 8-9; *see* Gov't Reply 2. At bottom, however, that argument is one and the same as — and collapses into — the Government's argument that the *Martindell* test does not apply to protective orders issued during arbitrations. *See* Gov't Mem. 12. That is, if the *Martindell* test applies, it follows that honoring the Protective Order is consistent with public policy. *See In re Grand Jury Subpoena Duces Tecum Dated Apr. 19, 1991*, 945 F.2d at 1225 (rejecting the argument that honoring a protective order in the face of a grand jury subpoena violated public policy). If the *Martindell* test does not apply, then there is no conflict because the Protective Order, whatever its terms, does not stand in the way of the Subpoena.

[3] If the Government could satisfy the *Martindell* test, as it argues, *see* Gov't Mem. 12-13, the Court could, in theory, avoid reaching the question of whether the *Martindell* test applies. But the question of whether the test applies is logically prior to the question of whether the Government can pass the test. Moreover, and not for nothing, although the Court need not and does not reach the question, the Court is skeptical that the Government could satisfy the test

5

transcripts subject to a protective order in a civil case for use in a criminal investigation. In addressing whether the protective order controlled, the Second Circuit weighed "the public interest in obtaining all relevant evidence required for law enforcement purposes" against "the vital function of a protective order issued under Rule 26(c)." 594 F.2d at 295-96. The objective of the latter — which the Court described as nothing less than "the cornerstone of our administration of justice" — was that set forth in Rule 1 of the Federal Rules of Civil Procedure: to "'secure the just, speedy, and inexpensive determination' of civil disputes." *Id.* at 295 (quoting Fed. R. Civ. P. 1). Given the Government's "awesome powers" as an investigator, that objective outweighed law enforcement's need to "exploit[] . . . the fruits of private litigation." *Id.* at 296. Thus, the Court concluded, "absent a showing of improvidence in the grant of [the] protective order or some extraordinary circumstance or compelling need," the Government is not entitled to materials protected by a Rule 26(c) protective order. *Id.*

The Second Circuit has reaffirmed the *Martindell* test on a few occasions, most recently in a 1991 decision that confirmed its application to grand jury subpoenas. *See In re Grand Jury Subpoena Duces Tecum Dated Apr. 19, 1991*, 945 F.2d at 1224; *see also Minpeco S.A. v. Conticommodity Servs. Inc.*, 832 F.2d 739, 742 (2d Cir. 1987); *Palmieri v. State of New York*, 779 F.2d 861, 864-66 (2d Cir. 1985); *cf. SEC v. TheStreet.com*, 273 F.3d 222, 234 (2d Cir. 2001) (observing that "the rule of *Martindell* establishes a strong presumption *against* public access where it is established that the party claiming privacy has reasonably relied on the protective order"). But the test has fared less well outside of this Circuit, as every other Court of Appeals that has confronted the issue has rejected the test. Two other approaches have emerged. First,

---

because its arguments are mostly generic and would apply to any grand jury investigation. *See, e.g.*, *In re Application to Unseal Civ. Discovery Materials*, No. 19-MC-179 (SN), 2021 WL 1164272, at *3-4 (S.D.N.Y. Mar. 24, 2021).

the Fourth, Ninth, and Eleventh Circuits adhere to a *per se* rule that grand jury subpoenas always prevail over civil protective orders.  *See In re Grand Jury Subpoena Served on Meserve, Mumper & Hughes*, 62 F.3d 1222, 1223-27 (9th Cir. 1995); *In re Grand Jury Proc. (Williams)*, 995 F.2d 1013, 1015-20 (11th Cir. 1993); *In re Grand Jury Subpoena*, 836 F.2d 1468, 1471-74 (4th Cir. 1988).  In rejecting the Second Circuit's balancing approach, these Courts emphasize, among other things, the grand jury's independent constitutional status and "sweeping power," concern that protective orders could provide a "a substitute for invocation of the Fifth Amendment privilege," and the availability of "other tools . . . to ensure successful resolution of a civil action which is threatened by a deponent's privileged silence."  *In re Grand Jury Subpoena Served on Meserve, Mumper & Hughes*, 62 F.3d at 1224-26 (summarizing the Fourth and Eleventh Circuits' approaches and describing its own) (cleaned up).  The Eleventh Circuit has also criticized the *Martindell* test as "unworkable" on the ground that no Second Circuit case has elaborated on what a showing of "compelling need" or "extraordinary circumstances" would require, and in any case, making such a showing would often be "untenable" because "the prosecutor must avoid disclosing grand jury proceedings."  *Williams*, 995 F.2d at 1018-19.

      The First and Third Circuits, meanwhile, have taken a middle-ground approach that is effectively the flip of the *Martindell* test.  Under this approach, "a grand jury subpoena supercedes a civil protective order unless the party seeking to avoid the subpoena demonstrates the existence of exceptional circumstances that clearly favor enforcement of the protective order."  *In re Grand Jury*, 286 F.3d 153, 156 (3d Cir. 2002); *see also In re Grand Jury Subpoena (Roach)*, 138 F.3d 442, 445 (1st Cir. 1998).  Like the Fourth, Ninth, and Eleventh Circuits, these Circuits eschewed the *Martindell* test because it "fail[ed] to pay proper respect" to the grand jury and its powers.  *See Roach*, 138 F.3d at 444.  But they declined to join those Circuits on the other

7

end of the spectrum in anticipation of situations where "the public interest in speedy resolution of private civil litigation . . . outweigh[s] the strong public interest in favor of prosecution of criminal wrongdoing." *In re Grand Jury*, 286 F.3d at 162; *see Roach*, 138 F.3d at 445. Under the resulting "modified *per se*" approach, courts are to determine whether "exceptional circumstances" compel enforcement of the protective order over the grand jury subpoena by considering factors including, but not limited to, the Government's need for the materials, the severity of the criminal charges, the interests served by continued confidentiality in the civil litigation, and the severity of the harm to litigants and to society if the protected material were to be disclosed. *Roach*, 138 F.3d at 445; *see also In re Grand Jury*, 286 F.3d at 162-63.

Interestingly, no court appears to have confronted the question presented here of whether the *Martindell* test applies to materials that are subject to a protective order entered by an arbitrator rather than a court. *But cf. In re Teligent, Inc.*, 640 F.3d 53, 57-58 (2d Cir. 2011) (citing *Martindell* in holding that a private party seeking disclosure of confidential mediation communications for use in an ongoing civil proceeding must demonstrate a "special need" for that material).[4] *Martindell*'s frosty reception in other Circuits is reason enough to hesitate before extending its reach. But there are compelling reasons to do more than hesitate and to decline such an extension of *Martindell*. Like the attorney-client privilege, the *Martindell* rule — that is, the presumption that a protective order trumps a grand jury subpoena — "stands in derogation of the public's right to every man's evidence," so "it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *In re Grand Jury Proc.*, 219

---

[4] The Government speculates that the vacuum is because "protective orders in arbitrations typically include carve-outs for [grand jury] subpoenas." Gov't Reply 2. The absence of any precedent may also be explained by the fact that arbitrations are often confidential and by the fact that the issue could arise only in a jurisdiction that followed *Martindell* — i.e., the Second Circuit — or, conceivably, in a Circuit that has not yet opined on the *Martindell* test at all.

8

F.3d 175, 182 (2d Cir. 2000) (internal quotation marks omitted).  And extending the *Martindell* rule to the arbitration context would not be consistent with the logic of the rule's principle.  Put differently, there are good reasons to distinguish judicial proceedings from arbitration proceedings when it comes to the question of whether and under what circumstances the grand jury's investigative powers should be curtailed.

First, the judicial system is a counterweight to the grand jury; the arbitration system (if it can even be called a system) is not.  The grand jury is a centuries-old "constitutional fixture." *United States v. Williams*, 504 U.S. 36, 47 (1992); *see Blair v. United States*, 250 U.S. 273, 282 (1919); *Marc Rich & Co. v. United States*, 707 F.2d 663, 665-66 (2d Cir. 1983).  It "has both the right and the duty to inquire into the existence of possible criminal conduct." *Marc Rich & Co.*, 707 F.2d at 665.  In keeping with this mandate, the grand jury's "investigative powers are necessarily broad." *Branzburg v. Hayes*, 408 U.S. 665, 688 (1972).  Indeed, "[n]owhere is the public's claim to each person's evidence stronger than in the context of a valid grand jury subpoena." *In re Grand Jury Proc.*, 219 F.3d at 186; *see Branzburg*, 408 U.S. at 688 (observing that the authority to subpoena witnesses "is not only historic, but essential to its task . . . . [because] 'the public . . . has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege." (citation omitted)).

Like the grand jury, the federal court system is also a centuries-old "constitutional fixture." *Williams,* 504 U.S. at 47.  Moreover, its constitutional stature is equal to that of the Executive Branch, which is tasked with enforcing the law and, in that capacity, plays a major role in issuing and enforcing grand jury subpoenas. *See, e.g.*, *In re Grand Jury Proceedings*, 486 F.2d 85, 89-90 (3d Cir. 1973).  The federal courts "are governmental bodies that stress formal procedures, are bound by formal rules of evidence and legal precedents, and are presided over by

judges who have substantial tenure and no other occupation." *Karl Koch Erecting Co. v. New York Convention Ctr. Dev. Corp.*, 838 F.2d 656, 660 (2d Cir. 1988). Their orders — including Rule 26(c) protective orders — have the force of law and are enforceable through contempt. *See, e.g.*, *In re Bouchard Transp. Co., Inc.*, No. 14-CV-1262 (PAC), 2018 WL 1581992, at *1 (S.D.N.Y. Mar. 28, 2018); *Haidon v. Town of Bloomfield*, 552 F. Supp. 3d 265, 273-74 (D. Conn. 2021); *see also* 18 U.S.C. § 401 ("A court of the United States shall have power to punish . . . such contempt of its authority . . . as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."). In short, the federal courts are, in the *Martindell* Court's words, the "cornerstone of our administration of civil justice." 594 F.2d at 295.

Arbitrations do not possess the same stature. They have no constitutional dimension. There is a "strong federal policy favoring arbitration" that dates to a 1925 statute (the Federal Arbitration Act), but, at bottom, "arbitration remains a creature of contract." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019); *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011). A "protective order" in arbitration is, thus, not really an "order," enforceable by contempt or similar power, at all. It too is merely an agreement between private parties. And "as a matter of public policy," it is plain that private agreements (such as non-disclosure agreements) "cannot trump compulsory process in a grand jury investigation." *Vringo, Inc. v. ZTE Corp.*, No. 14-CV-4988 (LAK), 2015 WL 3498634, at *8 (S.D.N.Y. June 3, 2015); *see also Branzburg*, 408 U.S. at 697 (holding that a journalist's promise to keep a source's identity secret does not trump a grand jury subpoena because "[p]rivate restraints on the flow of information are not so favored by the First Amendment that they override all other public interests"); *cf. In re Grand Jury Impaneled January 21, 1975*, 541 F.2d 373, 382 (3d Cir. 1976) (holding that a privilege created by a local rule "must yield [] to the public's interest in law

10

enforcement and in ensuring effective grand jury proceedings"); *Doe v. Benjamin Zaremski M.D., P.C.*, No. 21-CV-3187 (ER), 2022 WL 2966041, at *10 (S.D.N.Y. July 27, 2022) ("[N]ondisclosure agreements do not preclude discovery in federal litigation.").

Second, and related, there is a material difference between the role of an arbitrator and the role of a federal judge. Arbitrators are held to a lower standard of impartiality than Article III judges. *See, e.g.*, *Magid v. Waldman*, No. 19-CV-11516 (JMF), 2020 WL 4891218, at *4 (S.D.N.Y. Aug. 19, 2020). And arbitrators "need not follow all the niceties observed by the federal courts." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997). Indeed, arbitrators "possess broad[er] latitude to determine the procedures governing their proceedings, to hear or not hear additional evidence, to decide what evidence is relevant, material or cumulative, and otherwise to restrict the scope of evidentiary submissions." *Com. Risk Reinsurance Co. v. Sec. Ins. Co. of Hartford*, 526 F. Supp. 2d 424, 428 (S.D.N.Y. 2007). Most relevant for present purposes, arbitrators are not constrained by the "good cause" standard that governs entry of a Rule 26(c) protective order in federal court — let alone by the prospect of appellate review in entering such orders. In that regard, it is not even clear what it would mean to say that a protective order adopted by an arbitrator was "improvidently granted" — one of the ways in which the Government can obtain access to protected materials under *Martindell*.

Third, and also related, there are meaningful checks on abuse of protective orders in federal court that are absent in arbitrations. As noted, there is the "good cause" standard that governs entry of a Rule 26(c) order in the first place. *See, e.g.*, *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 148 (2d Cir. 1987) (finding extraordinary circumstances justifying production of documents despite protective order in part because "appellants never were required to show good cause as mandated by Rule 26(c)"). Additionally, arbitrations are almost always

11

private and (barring court enforcement) confidential, while there is a strong presumption in favor of public access in federal court. *See, e.g.*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). Among other things, that means that, in a federal court proceeding, unlike an arbitration, the Government has the opportunity to intervene and seek modification of a protective order from the court. *See Martindell*, 594 F.2d at 294 (noting that the "proper procedure" for the Government is to "seek permissive intervention in the private action . . . for the purpose of obtaining vacation or modification of the protective order" that conflicts with a grand jury subpoena); *see, e.g.*, *Minpeco*, 832 F.2d at 742 (reviewing the "district court's decision not to modify [the] protective order" in view of the *Martindell* rule); *Palmieri*, 779 F.2d at 864 (similar); *United States v. Maxwell*, 545 F. Supp. 3d 72, 83-85 (S.D.N.Y. 2021) (Nathan, J.) (describing a district court's decision to modify a protective order pursuant to the Government's grand jury subpoena). And finally, judges can and do issue referrals to prosecutors when they learn of criminal conduct, even if relevant information is covered by a protective order; in many arbitrations, the arbitrators are themselves bound by the protective orders and thus unable (or at least unlikely) to share information with law enforcement.

In light of these salient differences between court proceedings and arbitrations, the Court concludes that "balancing the interests at stake" yields a different conclusion here than the one reached in *Martindell*. 594 F.2d at 296. In arguing that the *Martindell* rule should apply, ▌ ignores these salient differences, merely repeating the Second Circuit's rationales for the rule and assuming that they apply with equal force to arbitrations. *See* ▌ Opp'n 6-8. ▌ also argues that declining to apply the *Martindell* rule to arbitrations "would have vast ripple effects. Parties who might otherwise resolve their differences privately, through arbitration, could be forced into federal court to protect their confidential information." *Id.* at 6. But given that

12

arbitrations otherwise offer much greater confidentiality than do proceedings in court, and materials produced pursuant to a grand jury subpoena are generally subject to strict rules of secrecy, *see* Fed. R. Crim. P. 6(e), the Court is skeptical that its holding will cause many law-abiding parties to opt for Article III courts over arbitrations.  And in any event, the strong federal policy in favor of arbitration aside, the fact that some parties might weigh the advantages and opt to resolve their disputes in a forum that is "the cornerstone of our administration of civil justice," *Martindell*, 594 F.2d at 295, rather than in arbitration, is not exactly a result to be feared.

In short, the Court holds that the *Martindell* test does not apply to arbitration proceedings. The Court need not and does not decide whether that means grand jury subpoenas always trump protective orders in arbitrations or, like the First and Third Circuits' approaches to Rule 26(c) protective orders, whether a grand jury subpoena would control only in the absence of "exceptional circumstances that clearly favor enforcement of the protective order." *In re Grand Jury*, 286 F.3d at 156; *see id.* at 162-63 (listing factors).  Either way, the Protective Order here would give way to the Subpoena.  First, the Government demonstrates a need for the materials, which include email communications that "will be difficult or impossible for the Government to get [] another way" (such as a judicially authorized search warrant) and testimony by ▮ about "critical information" as to which he would likely invoke his Fifth Amendment privilege during any criminal proceeding.  Gov't Mem. 12-13.  Second, it is investigating serious criminal charges — namely, ▮.  Third, disclosure would not harm the arbitration proceedings because, as a result of the non-disclosure order, ▮ will not even know of the disclosure.  And finally, any harm to the litigants and society is mitigated by the fact that, because *Martindell* is an outlier (▮), ▮ and ▮ could not reasonably have

13

relied on a belief that the Protective Order would shield their arbitration materials from disclosure pursuant to a valid grand jury subpoena. It follows that ▮▮▮ (if ▮ knew about the Subpoena) could not demonstrate "exceptional circumstances that clearly favor enforcement" of the Protective Order. *In re Grand Jury*, 286 F.3d at 156; *see Roach*, 138 F.3d at 445.

## CONCLUSION

*Martindell* and its progeny stand for the proposition that the Government should not lightly be able to gain access to materials that an Article III court has found "good cause" to protect from disclosure. Where, as here, parties seek to protect materials by private agreement and without judicial oversight, the Court concludes that they are not entitled to the same degree of protection. Accordingly, and for the reasons stated above, the Court holds that the *Martindell* test does not apply to arbitrations and that ▮▮▮ must comply with the Subpoena. Accordingly, the Government's motion to compel compliance with the Subpoena is GRANTED.

SO ORDERED.

Dated: March 26, 2024
       New York, New York

                                      JESSE M. FURMAN
                                   United States District Judge