UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE GRAND JURY SUBPOENA DATED FEBRUARY 23, 2024; USAO REF. NO. 2023R01207 | Case No.: 24-MC-____<br><br>**Under Seal per Court Order** |

## ███████████ RESPONSE TO THE GOVERNMENT'S MOTION TO COMPEL COMPLIANCE WITH GRAND JURY SUBPOENA

██████████████ hereby responds to the government's motion to compel ("Motion") compliance with a grand jury subpoena issued on February 23, 2024 (the "Subpoena"). The Subpoena demands production of "all discovery, filings, transcripts, orders, and any other documents" in a confidential arbitration (the "Arbitration") between ████████ ██████████████████ The Subpoena includes a non-disclosure order that prohibits ██████ from disclosing its existence to anyone for 180 days.

████ has already produced all of the documents it may produce. In response to an earlier subpoena, ██████ produced to the government its own records that had been produced in the Arbitration. But a protective order (the "Protective Order") forbids ██████ from sharing additional Arbitration documents with third parties, including the government, without first notifying ██████. ██████ is not at liberty to give ██████ that required notice. Because the Subpoena seeks confidential materials that are subject to a civil protective order, the government must "establish extraordinary circumstances or a compelling need for the materials it seeks." *In re Unseal Civ. Discovery Materials*, No. 19-MC-00179 (SN), 2021 WL 1164272, at *4 (S.D.N.Y. Mar. 24, 2021); *see also Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979) (setting forth the extraordinary circumstances or compelling need test); *In re Grand Jury Subpoena Duces Tecum Dated Apr. 19, 1991*, 945 F.2d 1221, 1224 (2d Cir. 1991) (holding that

the government must meet *Martindell*'s extraordinary circumstances or compelling need test where it issues a grand jury subpoena for documents subject to a civil protective order).

The government's arguments fail to provide ▓ with a sufficient legal basis to risk violating the Protective Order. First, the government is incorrect that the Protective Order—which became effective in ▓▓▓▓—permits ▓ to comply with the Subpoena absent notice to ▓ of the Subpoena's existence. The clauses that the government cites permit ▓ compliance with a lawfully-issued subpoena *only* upon notice to ▓, to afford ▓ the opportunity to file a motion to quash. (Motion at 7-9.) Since ▓ cannot alert ▓ to the Subpoena's existence, the Protective Order does not permit ▓ disclosure of ▓ confidential materials.

Second, the government has not established that the *Martindell* test is inapplicable to protective orders issued in arbitrations. (Motion at 9-12.) The government cites no authority for its position. ▓ has not found any such authority either, and sees no reason that arbitrations should be treated differently from other civil proceedings. In fact, courts throughout the Second Circuit faithfully apply *Martindell* whenever the government seeks materials that are the subject of a civil protective order. There is no reason to carve out an unprecedented "arbitration" exception to *Martindell* in this case.

Finally, applying *Martindell*, ▓ takes no position as to whether the government has met its burden to show extraordinary circumstances or compelling need for the confidential materials that it seeks. Should the Court find it has, ▓ will cooperate fully with the government and promptly produce all responsive documents.

2

## I. BACKGROUND

This Motion relates to the second subpoena the government has issued in this matter. ▮ has already produced thousands of its own documents (some of which it had designated confidential under the Protective Order) to the government in response to the first subpoena.[1] But ▮ explained that it could not produce the pleadings, transcripts or other materials designated confidential by ▮ in the Arbitration without affording ▮ notice. In response, the government served the second Subpoena, seeking documents and materials that ▮ has designated confidential. The Protective Order governs their production to the government.

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████

---

[1] The first subpoena sought neither ▮ confidential materials nor Arbitration documents subject to the Protective Order.

██████ thus now finds itself between two competing demands—the Subpoena and the Protective Order. Because ██████ has always scrupulously honored its obligations under the Protective Order and will continue to do so, ██████ cannot comply with the Subpoena.

## II.  STATEMENT OF POSITION

### A.  The Protective Order bars ██████ from complying with the Subpoena.

The government contends that the Protective Order, by its terms, permits ██████ to produce documents that ██████ designated as confidential. Neither of the paragraphs that it relies upon supports its position.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████

[REDACTED]

The government is therefore incorrect that the Protective Order permits [REDACTED] compliance with the Subpoena (absent notice to [REDACTED], which is not permitted by Court order).

### B. The *Martindell* test applies to all protective orders issued in civil proceedings, and this case is no exception.

The government next contends that, even if the Protective Order does not permit [REDACTED] compliance with the Subpoena, the government should not be forced to meet the *Martindell* standard because (1) *Martindell* applies to civil protective orders entered in federal court proceedings, not arbitrations; (2) [REDACTED] reliance on the Protective Order is unreasonable; and (3) the Protective Order is void against public policy if it is interpreted to block [REDACTED] compliance with the Subpoena. (Motion at 9-10.) None of these arguments are persuasive.

The Second Circuit held three decades ago that, where a civil protective order conflicts with a grand jury subpoena, the government bears the burden of showing that its subpoena should take precedence. *See In re Grand Jury Subpoena Duces Tecum*, 945 F.2d at 1224 ("[T]he district court erroneously placed the burden on the examiner to show why the subpoena should

have been quashed rather than placing the burden on the government to show why the protective order should be overturned."). The government has not met that burden here. It has adduced no authority for the proposition that *Martindell* applies to civil protective orders generally, but not to those entered into in civil arbitrations.

Nor is there any logical basis to reach that conclusion. *Martindell*'s reasoning would appear to apply equally to arbitrations. *Martindell* was concerned with protecting the "just, speedy, and inexpensive determination of civil disputes, by encouraging full disclosure of all evidence that might conceivably be relevant." *Martindell*, 594 F.2d at 295 (citation omitted). The *Martindell* court feared that, unless civil protective orders were "fully and fairly enforceable, witnesses relying upon such orders w[ould] be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for disposition of civil differences." *Id.*

The same is true for arbitration. Given the ubiquity of arbitration clauses in all manner of contracts, a rule that would undermine litigants' ability to rely upon the safeguards of protective orders issued in arbitrations would have vast ripple effects. Parties who might otherwise resolve their differences privately, through arbitration, could be forced into federal court to protect their confidential information—a result at odds with *Martindell*'s aim of promoting the "just, speedy, and inexpensive" resolution of civil disputes. *Id.*; *see also Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005) (discussing the "twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation") (cleaned up). There is simply no principled reason for this Court to carve out an exception to the *Martindell* rule for protective orders issued in arbitrations.

Nor is ▓▓▓▓ reliance upon the Protective Order unreasonable. In support of its argument, the government relies principally upon *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139 (2d Cir. 1987), but that case is distinguishable. There, the district court entered a sweeping protective order that governed the pre-trial stages of litigation, but made clear that "the confidentiality issue would be reconsidered upon commencement of the trial." *Id.* at 147. On appeal, when the appellants claimed reliance upon the order after the case had settled, the reviewing court deemed that reliance unreasonable, reasoning that the order was merely temporary. *See id.* ("[A]ppellants had ample warning that the October 14, 1982 order was of a temporary nature: Any reliance on such a sweeping, temporary protective order simply was misplaced."). *Cf. SEC v. TheStreet.com*, 273 F.3d 222, 231 (2d Cir. 2001) ("[P]rotective orders that are on their face temporary or limited may not justify reliance by the parties.").

Here, by comparison, the Protective Order contains no temporal limitation. Moreover, and perhaps more importantly, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and the Protective Order remains in full force and effect. ▓▓▓▓ reliance upon its protections is wholly reasonable.[2]

Finally, the Protective Order does not violate public policy. As the government acknowledges, the Second Circuit has considered and rejected that very argument. (*See* Motion at 12 n.7); *In re Grand Jury Subpoena Duces Tecum*, 945 F.2d at 1225 (disagreeing that civil protective orders that "conceal information relevant to the commission of a crime" violate public policy because that conclusion "would logically require the nullification of every protective order because all protective orders may conceivably result in the withholding of evidence from

---

[2] It is immaterial that the government would not be required to show extraordinary circumstances or compelling need to compel ▓▓▓▓ compliance with a grand jury subpoena issued ▓▓▓▓ ▓▓▓▓▓▓▓▓ (*See* Motion at 11.) A split among the Circuits does not render ▓▓▓▓ reliance upon the Protective Order unreasonable. Moreover, the Subpoena was issued in the Southern District of New York, which follows *Martindell*.

the government"). Protective orders issued in arbitrations are no different, and this Court should not be the first to adopt a rule that would require their wholesale nullification. To do so would itself contravene public policy, given the longstanding and well-established "federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (same).

Because no exception to the *Martindell* test applies, the government must show extraordinary circumstances or a compelling need for the confidential materials.

### C. ▮▮▮▮▮ takes no position as to whether the government has met its burden under *Martindell*.

Courts throughout the Second Circuit faithfully apply the *Martindell* test whenever the government issues a grand jury subpoena that seeks materials subject to a civil protective order. *See*, *e.g.*, *In re Unseal Civ. Discovery Materials*, No. 19-MC-00179 (SN), 2021 WL 1164272 (S.D.N.Y. Mar. 24, 2021); *United States v. Maxwell*, 545 F.Supp.3d 72 (S.D.N.Y. 2021); *Chemical Bank v. Affiliated FM Ins. Co.*, 154 F.R.D. 91 (S.D.N.Y. 1994). Where the government "relies on the general desire for secrecy," without offering "affirmations or facts suggesting that the [protected materials] cannot be obtained from other sources without compromising the investigation," it fails to meet the *Martindell* standard. *In re Unseal Civ. Discovery Materials*, 2021 WL 1164272 at *3.

▮▮▮▮▮ takes no position as to whether the government has met its burden here. Should the Court find it has, ▮▮▮▮▮ will fully and promptly comply with the Subpoena.

## III. CONCLUSION

For the reasons discussed above, ▇ respectfully requests that the Court require the government to show extraordinary circumstances or compelling need for the production of ▇ confidential materials. ▇ takes no position as to whether the facts recited in the government's Motion meet that standard.

DATED: March 18, 2024                                     COHEN WILLIAMS LLP


By: */s/ Alyssa D. Bell*
Alyssa D. Bell
abell@cohen-williams.com
NY State Bar No. 4924536
Michael V Schafler
mschafler@cohen-williams.com
*Pro hac vice* application pending
724 South Spring Street, 9th Floor
Los Angeles, California 90014
(213) 232-5160

Attorneys for ▇